UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Cori L. Nusbaum,

    Plaintiff,

v.

Enlighten Family Chiropractic, LLC, et al.,

    Defendants.
_____/

Case No. 19-cv-10223

U.S. District Court Judge
Gershwin A. Drain

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S OMNIBUS MOTION IN LIMINE [ECF NO. 93]

### I.   Introduction

On January 23, 2019, Plaintiff Cori Nusbaum filed a complaint in Michigan State court against Defendants Enlighten Family Chiropractic, LLC ("Enlighten"), and Trisha Ann Ambroski ("Dr. Ambroski"), jointly and severally. Defendants properly removed the lawsuit to this Court. The complaint alleges five causes of action: vicarious liability for medical error (Count I), professional negligence (Count II), gross negligence (Count III), res ipsa loquitur (Count IV), and professional negligence/failure to timely refer Plaintiff for treatment (Count V). Plaintiff seeks damages in the amount of $10 million.

1

Before the Court is Plaintiff's omnibus motion in limine filed on October 11, 2022. Defendants responded on October 19, 2022, and Plaintff replied on October 24, 2022. The motion is fully briefed and the Court heard oral argument on January 17, 2023.

For the reasons below, Plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**.

## II.     Factual Background

This lawsuit arises out the doctor-patient relationship between Ms. Nusbaum and Dr. Ambroski. Plaintiff received chiropractic care from Dr. Ambroski on two occassions. During the first visit, she presented with a headache and neckpain. Dr. Ambroski performed a chiropractic technique known as a "cervical manipulation," after which Plaintiff says her symptoms improved. During the second visit on July 27, 2016, however, Plaintiff says Dr. Ambroski performed a second cervical manipulation in "violent fashion." [ECF No. 98-6, PageID.5975]. Dr. Amborski provided medical care to Ms. Nusbaum at Enlighten Family Chiropractic in her capacity as a chiropractor and employee of Enlighten.

Nusbaum says Dr. Ambroski used a combination of chiropractic techniques involving spinal manipulation and head movements during her second visit that caused a blunt injury to her cervical spine and a traumatic vertebral artery dissection

("VAD"). [ECF No. 1, PageID.4]. Nusbaum claims she subsequently developed numbness in her face, right sided "paresthesias", severe headaches and facial weakness, drooling from the right side of her mouth, numbness in the right side of her body, as well as right-sided weakness. [Id].

Nusbaum went to ProMedica Bay Park Hospital in Ohio on July 31, 2016, where she underwent a CT scan of the head and a CT angiogram of the head and the neck. The results revealed evidence of large vessel occlusion. She was then transferred to ProMedica Toledo Hospital and started having more right-sided weakness and "hemisensory" loss as well as "ataxia" in her right upper extremity. [Id]. Nusbaum alleges that further investigation by the hospital revealed that she had a right vertebral artery dissection, a right medullary cerebrovascular accident ("CVA"), i.e. stroke, and "Brown-Séquard syndrome" secondary to post-traumatic VAD.

She was then transferred and admitted to ProMedica Flower Hospital Campus-Rehabilitation Unit. She stayed there from August 4, 2016, to August 20, 2016, for rehabilitation therapy.

Plaintiff seeks exclusion of various exhibits, depositions, records, and references to certain terms, and legal theories. The Court will discuss whether any of that evidence is admissible.

### III. Plaintiff's Omnibus Motion in Limine

#### A. Motion in Limine 1: Plaintiff's Motion-in-limine to Preclude Unfair, Prejudicial Evidence

The first issue of Plaintiff's motion in limine raises three objections under Fed. R. Evid. 401 and 403: (1) exclusion of evidence supporting Defendants' causation theory that Dr. Ambroski did not cause Plaintiff's VAD; (2) exclusion of the informed consent form Plaintiff signed; (3) exclusion of any reference to the income or litigation experience of Plaintiff's expert Dr. Alan Bragman as a "hired gun." [ECF No. 98, PageID.5819-20].

Under Fed. R. Evid. 401, evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Under Fed. R. Evid. 403, the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Unfair prejudice can result when evidence that is only marginally probative tends to be given preemptive weight by the jury substantially out of proportion to its logical force. *United States v. Crockett*, 586 F. Supp. 2d 877 (E.D. Mich. 2008). Evidence is also unfairly prejudicial when it has an undue tendency to suggest a

decision based on improper considerations. *see United States v. Hazelwood*, 979 F.3d 398, 412 (6th Cir. 2020).

First, Plaintiff seeks the exclusion of any evidence of Plaintiff's "preexisting" VAD or that Plaintiff's VAD was caused by anything other than cervical manipulation. She says Defendants have no evidence to show that Plaintiff's VAD was caused by anything other than Dr. Ambroski's negligent cervical manipulations. Plaintiff objects to admission of evidence on this issue as irrelevant.

In support of their causation defense, Defendants rely on the opinion of a neuroradiology expert, Dr. Meyer. This expert opined that Dr. Ambroski did not cause Plaintiff's VAD. [ECF No. 95, PageID.5659]. Defendants also seek to admit medical records showing that Plaintiff arrived at Dr. Ambroski's office with complaints of headaches and neck pain. Because these symptoms are associated with VAD, Defendants believe this evidence also supports their argument that Plaintiff had preexisting VAD before Dr. Ambroski manipulated her cervical spine.

Plaintiff says that Defendant's evidence contradicts Dr. Ambroski's own admissions that Plaintiff had no history of any cervical spine trauma or other risk factors for VAD. Plaintiff also advances arguments and evidence that rebut Defendants' causation theories. For this reason, Plaintiff argues that Defendants' evidence only serves to "mislead the jury and confuse the issues of the case." [ECF

5

No. 93, PageID.4745]. Plaintiff believes that exposure to such "prejudicial and inflammatory" information would impair the jurors' ability to focus on the merits of the case, and instead direct their attention to irrelevant issues that are not pertinent to this case. As such, Plaintiff argues that even if this evidence is relevant, it will be excludable at trial under Fed. R. Evid. 403.

The evidence supporting Defendants' causation theories tend to make it more or less probable that Dr. Ambroski caused Plaintiff's VAD. Although Plaintiff advances arguments and evidence that rebut Defendants' causation theories, the probative value of Defendant's evidence is not substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

The expert report of Dr. Meyer, and evidence of the symptoms Plaintiff experienced before she visited Dr. Ambroski is not the kind of evidence that would suggest a decision on an improper basis, emotion, or influence the jury to give undue preemptive weight to evidence that is only marginally relevant. Fed. R. Evid. 403, advisory committee's notes. *See e.g., United States v. Bilderbeck*, 163 F.3d 971, 978 (6th Cir. 1999) (Undue prejudice can happen when "prior-act evidence so shocks the conscience that the jury may decide that the defendant is a bad person and deserves to be convicted, even if his guilt were unproven in the instant case, 'because a bad

person deserves punishment.'"). *See also United States v. Hazelwood*, 979 F.3d 398, 412 (6th Cir. 2020) ("The extraordinary risk of prejudice posed by the offensive recordings needs little explanation. Decent society roundly condemns the backward and intolerant views heard on the recordings").

Unlike the offensive statements *Hazelwood* and prior act evidence in *Bilderbeck*, Defendants' expert report and a description of the symptoms Plaintiff had before she visited Dr. Ambroski do not improperly appeal to emotions, opinions, or character traits. Those items are highly relevant to the consequential issue of causation. This is true even though the causation theories that Defendants advance are contradicted by other evidence in the record. Further, Defendants' evidence is minimally prejudicial, if at all. It is not excludable under Fed. R. Evid. 403.

Defendants' evidence suggesting that Dr. Ambroski was not the cause of Plaintiff's VAD is admissible.

Secondly, Plaintiff says that any evidence or testimony as to whether defendant Amborski informed Ms. Nusbaum, either in writing or verbally, of any risks or complications for vertebral artery dissection or stroke related to manipulation of the neck has no relevance and is certainly excludable under Fed. R. Evid. 403. [ECF No. 93, PageID.4741]. Plaintiffs believe the evidence is excludable under Fed. R. Evid. 403 because "nothing in Defendants' form – although entitled

7

'Terms of Acceptance and Consent for Care' – legally informs Plaintiff of the risks of vertebral artery dissection with chiropractic manipulation." [Id].

Defendants seek to offer Dr. Ambroski's consent form and her testimony to show that she discussed some risks of chiropractic care with Plaintiff such as headaches, soreness, and nerve injury. She admits, however, that those risks did not include VAD. Further, Dr. Ambroski's consent form does not discuss any of the risks associated with chiropractic manipulation. [ECF No. 98-3, PageID.5898].

Plaintiff's complaint alleges that Dr. Ambroski failed to obtain informed consent. [ECF No. 1, PageID.10]. It is well-established that "[t]he doctrine of informed consent requires a physician to warn a patient of the risks and consequences of a medical procedure." *Wlosinski v. Cohn*, 269 Mich. App. 303, 308; 713 N.W.2d 16 (2005).

Dr. Ambroski's testimony regarding the risks she disclosed to Plaintiff before the cervical manipulation and the consent form are probative on the question of whether Dr. Ambroski obtained Plaintiff's informed consent. Although she admits that she did not specifically discuss VAD as a risk to spinal manipulation, Dr. Ambroski claims that the standard of care did not require her to disclose that risk. Thus, the evidence that Plaintiff asks the Court to exclude is relevant. The probative value of this testimony is not substantially outweighed by the danger of unfair

prejudice, confusing the issues, misleading the jury, presenting cumulative evidence, or wasting time.

The informed consent form is admissible and the question of whether Dr. Ambroski obtained informed consent under Michigan law in compliance with the applicable standard of care is for the jury to decide.

Finally, Plaintiff seeks to exclude, under Fed. R. Evid. 403, any reference to the income or litigation experience of Plaintiff's expert Dr. Alan Bragman as a "hired gun." This evidence includes financial information, his volume of plaintiff's-side work, and litigation experience. [ECF No. 95, PageID.5662]. It appears that Defendants also seek to introduce evidence of an article written by Dr. Bragman but rejected for publication entitled, *Stroke Due to Cervical Manipulation*. [Id].

Fed. R. Evid. 403 does not bar admission of this evidence. Information that relates to the potential bias of an expert witness is relevant to the witness's credibility, which could directly affect impeachability. *See Burger v. Allstate Ins. Co*., 2009 WL 1587396, at *2 (E.D. Mich. June 8, 2009) (granting the admission of 1099s, payment records, and other information related to an expert physician's financial relationship with any defendant he provided expert witness services for from 2003 to 2008 for impeachment purposes).

Other federal courts have allowed a litigant's showing of bias to prevail against objections to broad requests for financial information as well. In *Butler v. Rigsby*, 1998 WL 164857 (E.D.La. Apr.7, 1998), the court required physicians who treated the plaintiffs to produce a listing of the total number of their patients referred by plaintiffs' counsel, the net income of the physicians' medical groups, the percentage of their net litigation-related income. In *Spencer v. United States*, 2003 WL 23484640 (D.Kan. 2003), the Court held that an expert's gross income from litigation was relevant to show possible bias and compelled the defendant's expert to testify about how much gross income he earned from litigation consulting. *See also Jones v. Young*, 2007 WL 2695621 (E.D.Ark. Sept.10, 2007) (plaintiff entitled to the amount of income expert receives in litigation-related matters).

The jury would have sufficient information to assess Dr. Bragman's bias and qualifications if provided the percentage of income derived from expert witness services, the number of patients he has, the services he provides as a physician, and his experience serving as an expert for medical malpractice plaintiffs. The evidence that Defendants seek to admit on this issue is not excludable under Fed. R. Evid. 403 because it is not unfairly prejudicial and would not be cumulative or confusing to the jury. The same is true for any testimony given by Dr. Bragman regarding the article he allegedly wrote that was rejected for publication.

However, Defendants may not refer to Dr. Bragman as a "hired gun." This implies that his opinions are fabricated. While such references are probative on the issue of bias, they invite the jury to make improper considerations in evaluating Dr. Bragman's credibility. Defendants may challenge his qualifications and impartiality for impeachment purposes using other evidence that would not place unsubstantiated claims of fabrication before the jury either directly or indirectly. The unfair prejudice denoted by the term "hired gun" substantially outweighs its probative value.

Plaintiff's motion in limine #1 is **GRANTED** in part and **DENIED** in part.

### B. Motion in Limine 2: Plaintiff's Motion for Special Instruction that Defendants' Failure to Furnish the Mandatory Pre-suit Written Repsonse to the Notice Of Intent is an Adoptive Admission and/or Statement against Interest.

Plaintiff sent Defendants a letter entitled "Notice of Intent to File Claim" ("NOI"). She claims their response to the NOI was evasive, violates MCL § 600.2912b(7), and the jury should therefore be instructed that their response was an adoptive admission of Defendants' failure to meet the applicable standard of care or a statement against interests under Fed. R. Evid. 801(d)(2)(B) and 804(b)(3).

Fed. R. Evid. 801(d)(2)(B), pertains to hearsay statements: a statement that is offered against an opposing party and is one the party manifested, that it adopted or believed to be true is excluded from the definition of hearsay.

11

Under Fed. R. Evid. 804(b)(3), the following statements are excluded from the definition of inadmissible hearsay: a statement that a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest, or had so great a tendency to invalidate the declarant's claim against someone else, or to expose the declarant to civil or criminal liability.

MCL § 600.2912(b)(7) requires a health professional to furnish a response to the NOI within 154 days of receipt and the response must describe "the manner in which it is claimed by the health professional or health facility that there was compliance with the applicable standard of practice or care."

Plaintiff says Defendants' response was overly broad, and evasive to the overall issue in this case, "whether defendant Amborski used excessive force during the chiropractic manipulation on Miss Nusbaum's neck, causing a vertebral artery dissection and subsequent stroke, and whether defendant Amborski obtained Miss Nusbaum's informed consent to perform such manipulations on her neck." [ECF No. 98, PageID.5820]. Plaintiff also says Defendants' response was inadequate because it does not mention Plaintiff's informed consent claims.

Defendants' response alleges that they fully complied with the applicable standard of care and that Plaintiff's NOI was defective. The letter sent on

Defendants' behalf by their attorneys is an opposing party statement and is excluded from the definition of hearsay. However, they were not statements against their interest or admissions conceding Defendants failed to comply with the standard of care with respect to the spinal manipulation or the consent form.

Even if Defendants' response did violate MCL § 600.2912(b)(7), the sole remedy prescribed by statute for such conduct is to allow Plaintiff to file their suit early—before the normal 182 day waiting period. *See Bush v. Shabahang*, 484 Mich. 156, 175, 772 N.W.2d 272, 277, 283 (2009) (holding that the defendants' response to the Notice of Intent was deficient and plaintiff could avail himself to the shortened 154–day waiting period and because "the only penalty provision included in § 2912b is very minor: a shortening of the defendant's waiting period by 28 days."). Plaintiff has filed her suit, so any prejudice resulting from Defendants' response is cured.

The instruction that Plaintiff requests is unwarranted. However, she may submit Defendants' response to the jury and, if appropriate, the Court will consider any generalized proposed instructions regarding adoptive admissions.

Plaintiff's motion in limine #2 is **DENIED**.

### C. Motion in Limine #3: Plaintiff's Motion in Limine to Strike Defendants' Claim of Contributory and/or Comparative Negligence for Failure to Comply with Discovery.

Plaintiff argues that Defendants' claim of comparative negligence should be precluded because it is without merit, as there was no indication that Ms. Nusbaum's stroke had occurred prior to her presentation to the hospital on July 31, 2016, four days after her visit to Dr. Ambroski. [ECF No. 98, PageID.5821].

To support the argument that Plaintiff did not contribute to her own injuries, she cites Dr. Ambroski's deposition transcript, where she testified that Plaintiff did not present to her office with "any sort of red flags for VAD." [ECF No. 98, PageID.5821]. Plaintiff also says that she experienced symptoms such as facial tingling and a stabbing-knife pain behind her ear on July 28, 2016, but that those are not traditional symptoms of a stroke.

However, she cites the testimony of her medical expert, Dr. Venkat. Dr. Venkat testified in a deposition that the stroke that started on July 28, 2016, and onset of Ms. Nusbaum's neurological symptoms, "are all in the lateral medullary portion of the right side of the brain stem. And that is where she had the eventual stroke. So, [receiving antiplatelet therapy (traditional treatment for a stroke) on July 28, 2016 was] not going to prevent a stroke in that area, because she [was] already having a stroke in that area." [ECF No. 94-10, PageID.5410].

Defendants cite other evidence that could show Plaintiff's comparative negligence. Notably, even though Plaintiff's stroke apparently began on July 28, 2016, she did not go to the hospital until July 31, 2016. As testified to by Plaintiff's own medical expert, Dr. Lee, facial numbness (one of the symptoms Plaintiff experiences on July 28, 2016) is a sign of a stroke. [ECF No. ECF No. 95-7, PageID.5710]. Dr. Lee also testified that, if Plaintiff had visited the hospital on July 28, 2016, she may have been able to "mitigate the chance of her having as severe of symptoms as she ultimately developed if treatment would have been instituted earlier." [ECF No. 95-7, PageID.5710].

Dr. Venkat testified along the same lines, the antiplatelet therapy may not have prevented the stroke on July 28, 2016, but it could have lessened the severity of the stroke. [ECF No. 95, PageID.5668]. Another Defense expert, Dr. Pikus also provided an expert report calling into question the causal connection between Dr. Ambroski's treatment and Plaintiff's injuries. [ECF No. ECF No. 95-3, PageID.5689].

These testimonies provide enough factual basis to support Defendants' comparative negligence defense and they cannot be precluded from submitting it to the jury.

Plaintiff's motion in limine #3 is **DENIED**.

**D. Motion in Limine #4: Plaintiff's Motion In Limine to Limit Defendants' Expert Testimony to What was Disclosed During Discovery, and Strike Defendants' Affirmative Defenses, Lay Witness Testimony, Exhibits, Scientific Literature For Failure to Comply with Discovery.**

Trial was scheduled for November 15, 2022. Plaintiff asserts that in response to her complaint filed on January 23, 2019, Defendant asserted numerous affirmative defenses without factual support. Plaintiff also says that she served interrogatories requesting the factual basis of Defendants' affirmative defenses and Defendants failed to provide any answers to the interrogatories. [ECF No. 93, PageID.4751]. She further claims that Defendants failed to timely disclose expert and lay witness testimony, exhibits, and scientific literature that they plan to use at trial.

Under Fed. R. Civ. P. 26(a)(1)-(2), a party must, without awaiting a discovery request, provide to the other parties: (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses. This includes lay witnesses and expert witnesses.

Pursuant to FRCP 33(b)(3), "each interrogatory [sent by the opposing party] must, to the extent it is not objected to, be answered separately and fully in writing under oath." Per FRCP 33(b)(3), "[t]he responding party must serve its answers and any objections within 30 days after being served with the interrogatories."

16

Additionally, pursuant to FRCP 37(a)(4), "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."

Pursuant to FRCP 26(e), a party that has made a disclosure under Rule 26(a) or who has responded to an interrogatory must supplement that disclosure, "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

A party must make these expert disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made at least 90 days before the date set for trial or for the case to be ready for trial. Fed. R. Civ. P. 26(c)(2).

Plaintiff seeks to exclude the evidence not timely disclosed under Fed. R. Civ. P. 37(c). Under that rule, if a party fails to provide information or identify a witness as required by Rule 26(a), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may

inform the jury of the party's failure; and (C) may impose other appropriate sanctions. *Id*.

In determining whether sanctions are appropriate pursuant to Rule 37, the Sixth Circuit looks to four factors. First, whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault. Second, whether the party in favor of the sanction was prejudiced by the other party's failure to cooperate in discovery. The third factor is whether the party was warned that failure to cooperate could lead to sanctions. Finally, the fourth factor considers whether less drastic sanctions were first imposed or considered. *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997).

The Court has not warned Defendants that failure to cooperate with discovery could lead to sanctions or previously considered a less drastic sanctions.

While Defendants do not dispute that they failed to timely disclose evidence, they say the error was inadvertent, and that Plaintiff has been on notice of Defendants' lay and expert witnesses since June 2019 and has had access to all witnesses since then. Defendants' Amended Answers to Plaintiffs Interrogatories dated February 4, 2020 show that Defendants properly supplemented its answers to interrogatories regarding witnesses. [ECF No. 93-12, PageID.5025]. Further, Defendants' First Amended Lay and Expert Witness Disclosure dated May 13, 2020, shows that all witnesses were disclosed long before the November 15, 2022, trial

18

date. See [ECF No. 32, PageID.580]. The Court is satisfied that any failure to disclose witnesses has been cured and Plaintiff has had ample time to depose witnesses.

Defendants further allege that Plaintiff has been on notice of Defendants exhibits since they first discussed the joint final pretrial order years ago. And Plaintiffs have purportedly been on notice of the literature Defendants' experts will rely on since July 2020. [ECF No. 95, PageID.5678].

Plaintiff's response is that Defendants never actually produced the exhibits or literature requested in the interrogatories. Defendants purportedly provided only a laundry list of potential exhibits and literature. Plaintiff says this failure to produce precluded her from inspecting those documents, resulting in prejudice.

Trial is scheduled to begin on April 18, 2023, if there are exhibits or literature or any evidence subject to discovery that Defendants have not yet produced, they must do so by **January 26, 2023**.

Failure to produce those documents will result in cost being imposed against Defendants and/or Defense Counsel and any evidence not produced by that date may be excluded from trial.

On this basis, Plaintiff's motion in limine #4 is **DENIED.**

## IV. Conclusion

Plaintiff's motion in limine #1 is **GRANTED IN PART AND DENIED IN PART**:

(1) evidence supporting Defendants' causation theory that Dr. Ambroski did not cause Plaintiff's VAD is **ADMISIBLE**.

(2) the informed consent form Plaintiff signed is **ADMISSIBLE**.

(3) reference to the income or litigation experience of Plaintiff's expert Dr. Alan Bragman is **ADMISSIBLE** but references to him as a "hired gun" are **INADMISSIBLE**.

Plaintiff's motions in limine #2-4 are **DENIED**.

**IT IS SO ORDERED.**

Dated: January 19, 2023         /s/ Gershwin A. Drain
                                GERSHWIN A. DRAIN
                                UNITED STATES DISTRICT JUDGE

### CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
January 19, 2023, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager